IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                              No. CR 21-0314 JB

ALONSO ESTRADA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Alonso Estrada's Amended Objection to the PSR, filed January 6, 2023 (Doc. 57)("Amended Objection"). The primary issue is whether Defendant Alonso Estrada's base offense level is subject to a 2-level increase pursuant to § 3C1.2 of the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") for recklessly creating a substantial risk of serious bodily injury to another in the course of fleeing from law enforcement. The Court concludes that Estrada's flight from police created a substantial risk of death or serious injury to others and, therefore, his base offense level is subject to a 2-level increase under U.S.S.G. § 3C1.2. Accordingly, with an offense level of 23 and a criminal history category of V, the Court concludes that the Guidelines establish an imprisonment range of 84 to 105 months.

## FACTUAL BACKGROUND

When considering an objection to a presentence report, and when neither party challenges the sufficiency of the presentence report's factual allegations, the Court can accept the presentence report's factual allegations as true. See Fed. R. Crim. P. 32(i)(3). Here, neither party objects to the presentence report's factual allegations. Accordingly, the Court takes its facts from the

Presentence Investigation Report, filed November 1, 2022 (Doc. 44)("PSR"); the Addendum to the Presentence Report, filed December 2, 2022 (Doc. 53)("PSR Addendum"); the Second Addendum to the Presentence Report, filed January 11, 2023 (Doc. 58)("Second PSR Addendum"); the Criminal Complaint, filed January 4, 2020 (Doc. 1)("Complaint"); and the Report of Officer Norman Shatto (dated December 29, 2020), filed January 6, 2023 (Doc. 57-1)("APD Report").

In the early morning of Tuesday, December 29, 2020, officers from the Albuquerque Police Department ("APD") responded to a report of a stolen car on Albuquerque's West Side. See PSR ¶ 11, at 4; Complaint ¶ 5, at 4. The car's owner, T.S., told the APD officers that an unknown man held her at gunpoint, took her car keys, and stole her silver 2008 Dodge Magnum. See PSR ¶ 11, at 4; Complaint ¶ 5, at 4. The Dodge Magnum was equipped with LoJack, a GPS based anti-theft system used to locate missing cars. See PSR ¶ 12, at 4; Complaint ¶ 8, at 5. Later that morning, APD used information from the LoJack system to triangulate the car to Albuquerque's southeast quadrant. See PSR ¶ 12, at 4; APD Report at 1; Complaint ¶ 8, at 4. APD officers "saturated the area" to look for the car and, at around 10:00 a.m., an APD helicopter spotted the Dodge Magnum at 928 Cardenas Dr. SE. APD Report at 1. See PSR ¶ 12, at 4. When officers first located the car, it was unoccupied, but APD Officer Norman Shatto observed a man enter the car and back it out of the driveway. See APD Report at 1. Shatto followed the Dodge Magnum in his car and, turning on his emergency lights and siren, "attempted a traffic stop . . . at the intersection of San Pedro [Drive SE] and Kathryn [Avenue SE]." APD Report at 1. This

intersection is approximately two city blocks away from the driveway on Cardenas Drive SE.[1] This intersection is "in a residential neighborhood, with no parking spaces along either street." Second PSR Addendum at 2. See CABQ Maps; Google Maps. The speed limit on Kathryn Avenue SE is thirty miles per hour and the speed limit on San Pedro Drive SE is thirty-five miles per hour. See Second PSR Addendum at 2. Kathryn Avenue SE has one eastbound lane and one westbound lane of traffic, while San Pedro Drive SE has one northbound lane, one southbound lane, and one bicycle lane. See CABQ Map (click "2018 Aerial Photography Layer"). There is no curbside parking on either street, see Second PSR Addendum at 2; CABQ Map (click "2018 Aerial Photography Layer"), nor on any of the surrounding blocks, see CABQ Map (click "2018 Aerial Photography Layer").

After Shatto turned on his lights and sirens, Estrada fled from the traffic stop "at a high rate of speed." PSR ¶ 12, at 4. See APD Report at 1. While fleeing from the intersection of San Pedro Drive SE and Kathryn Avenue SE, Estrada's car almost struck another vehicle. See PSR ¶ 12, at

---

[1] See CABQMAPS - Advanced Map Viewer, https://www.cabq.gov/gis/advanced-map-viewer (click "Use Advanced Map Viewer 2.0)("CABQ Map"); Google Maps, https://www.google.com/maps/ (type "Albuquerque, NM" into the search bar in the upper lefthand corner)("Google Maps"). In consideration of the two-year gap between Estrada's flight and the drafting of this Memorandum Opinion and Order, the Court uses the historical geospatial imagery most contemporaneous with Estrada's flight from CABQ Map whenever possible.
   The Court may take judicial notice of CABQ Maps and Google Maps as reliable sources of information whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b)(2) (allowing courts to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). In Pahls v. Thomas, 718 F.3d 1210 (10th Cir. 2013), the United States Court of Appeals for the Tenth Circuit, lacking a map in the record, took judicial notice of Google Maps to understand the location and movements of a motorcade. See 718 F.3d at 1216 n.1 (citing to David J. Dansky, The Google Knows Many Things: Judicial Notice in the Internet Era, 39 Colo. Law. 19, 24 (2010)("Most courts are willing to take judicial notice of geographical facts and distances from private commercial websites such as MapQuest, Google Maps, and Google Earth.")).

4; APD Report at 1.  After Shatto observed the Dodge Magnum run through "several stop signs" and "dr[i]ve away at a high right of speed," Shatto "turned off [his] emergency lights and disengaged from the vehicle."  APD Report at 1.  See PSR ¶ 12, at 4.  The APD helicopter unit that had spotted initially the parked Dodge Magnum pursued the car, maintaining visual contact as Estrada drove through Albuquerque.  See PSR ¶ 12, at 4; APD Report at 1; Complaint ¶ 8, at 5.  The officers in the helicopter radioed their colleagues, alerting them "that the vehicle continued to drive in a reckless manner by driving at a high rate of speed and disobeying traffic lights and signs."  APD Report at 1.  See PSR ¶ 12, at 4; Second PSR Addendum at 2 (quoting APD Report at 1).  During this phase of Estrada's flight from law enforcement, APD's "marked police vehicles stayed out of sight."  APD Report at 1.  The helicopter tracked the vehicle until Estrada exited and abandoned the car near the Motel 76 located at 2007 Candelaria Rd. NE.  See APD Report at 1; Complaint ¶ 9, at 5.  Estrada drove approximately six miles that morning from the intersection in South San Pedro where he fled from Shatto to the spot near Interstate 25 where he left the car.[2]  See Map of Estrada's Route, filed January 13, 2023 (Doc. 59-2)("Estrada Route Map").[3]

    Once Estrada abandoned the car, he continued to flee on foot.  Complaint ¶ 10, at 6.

> During the foot chase, ESTRADA jumped over an iron fence into the Motel 76 parking lot.  After ESTRADA was on the other side of the fence, APD officers witnessed ESTRADA reaching for the front of his waistband in a manner that they believed ESTRADA was reaching for a gun.  ESTRADA's location was monitored the entire time by APD air support, and the air unit was able to advise where ESTRADA was located within the motel.  Ultimately, ESTRADA was contacted by officers in the western hallway outside of the Motel 76.  This outdoor hallway is between a fence line and exterior motel rooms.

---

    [2]See Google Maps (click the bent arrow in the blue diamond for "Directions," type "San Pedro @ Kathryn, Albuquerque, NM 87108" into the "Starting Point" field, and "Pan American Frontage Rd N & Cutter Rd NE, Albuquerque, NM 87107" into the "Destination" field).

    [3]The Estrada Route Map is approximate.  Estrada's exact route is unknown.

Complaint ¶ 10, at 6.  APD officers apprehended Estrada in the Motel 76, and found "a black Smith and Wesson 9mm, M&P handgun, with a serial number NFA3764, within five yards of [Estrada].  The handgun was loaded with a magazine which had three rounds of 9mm ammunition."  PSR ¶ 13, at 4.  "Next to the handgun, officers also located a set of keys, which belonged to the 2008 silver Dodge Magnum . . . . [Estrada] was the only person who fled from the vehicle, and the only person in the hallway where the handgun and keys were located."  Complaint ¶ 11, at 6.  While testing the weapon, the APD firearms unit determined that the pistol "fired as designed" and travelled to New Mexico through interstate commerce.  PSR ¶ 15, at 4.  Law enforcement also learned that Estrada had previously been convicted of a felony punishable by imprisonment for a term exceeding one year.  See PSR ¶ 14, at 4; Plea Agreement ¶ 7, at 4, filed August 22, 2022 (Doc. 44).

## PROCEDURAL BACKGROUND

On March 12, 2021, the Grand Jury indicted Estrada on three counts: (i) Carjacking ("Count I"); (ii) Felon in Possession of a Firearm and Ammunition ("Count II"); and (iii) Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, and Possessing and Brandishing a Firearm in Furtherance of Such Crime ("Count III").  See Indictment at 1-2, filed March 12, 2021 (Doc. 4).  On August 22, 2022, Estrada pled guilty to Count II.  See Plea Agreement ¶ 1-33, at 1-12.  The United States in turn agreed to dismiss Count I and Count III.  See Plea Agreement ¶ 26, at 11.

On November 1, 2022, the United States Probation Office ("USPO") filed the PSR.  See PSR ¶¶ 1-86, at 1-20.  The PSR indicates that Estrada's base offense level is 24.  See PSR ¶ 20, at 5.  The PSR applies a 2-level decrease to Estrada's base offense level under U.S.S.G. § 3E1.1(a)

for accepting responsibility, and a 1-level decrease under U.S.S.G. § 3E1.1(b) for assisting in the investigation or prosecution of his conduct. See PSR ¶¶ 27-28, at 5-6. The PSR also applies a 2-level increase to Estrada's base offense level under U.S.S.G. § 3C1.1 for obstruction of justice. See PSR ¶ 24, at 5. In sum, the PSR asserts that Estrada's total offense level is 23. See PSR ¶ 29, at 6. With a base offense level of 23 and criminal history category of V, the PSR indicates that the Guideline imprisonment range is 84 to 105 months. See PSR ¶ 68, at 17.

On December 1, 2022, Estrada objected to the applicability of the 2-level enhancement under U.S.S.G. § 3C1.1 for obstructing justice, asserting that the increase is "improper" in his case. Defendant Alonso Estrada's Objection to the PSR [Doc. 47] at 2, filed December 1, 2022 (Doc. 49)("First Objection"). In support of his objection, Estrada invokes the Commentary to U.S.S.G. § 3C1.1, which establishes that "avoiding or fleeing from arrest" does not ordinarily merit the enhancement's application. First Objection at 2 (quoting U.S.S.G. § 3C1.1 Application Note 5). Accordingly, Estrada asks the Court to conclude that his base offense level is 21, and that his Guideline imprisonment range is 70 to 87 months. See First Objection at 2.

Later that same day, the United States responded to the First Objection. See United States' Response to Defendant's Objection to the Presentence Investigation Report at 1-5, filed December 1, 2022 (Doc. 51)("First Response"). In the First Response, the United States agrees that U.S.S.G. § 3C1.1 does not apply to Estrada's conduct, but argues that his flight from police still requires a 2-level enhancement "because the very next guideline -- U.S.S.G. § 3C1.2 -- *does apply*." First Response at 1 (emphasis in original). U.S.S.G. § 3C1.2 establishes that a 2-level enhancement is appropriate if "during the course of fleeing from a law enforcement officer," a defendant "recklessly created a substantial risk of death or serious bodily injury." U.S.S.G. § 3C1.2. The

United States argues that Estrada meets this standard because he "fled from officers in a vehicle at a high rate of speed and during his flight, ran several stop signs and almost struck another vehicle." First Response at 1 (citing PSR ¶ 12, at 4). According to the United States, "U.S.S.G. § 3C1.2 generally applies in situations where, like here, the defendant led officers on a vehicle chase." First Response at 3. As authority for this principle, the United States cites to multiple cases in which the Tenth Circuit has upheld district courts applying the U.S.S.G. § 3C1.2 enhancement to defendants fleeing arrest in a car. See First Response at 3-4 (citing United States v. Conley, 131 F.3d 1387, 1389 (10th Cir. 1997); United States v. Moreira, 317 F. App'x 745, 747 (10th Cir. 2008)(unpublished);[4] United States v. Gray, 512 F. App'x 803, 807 (10th Cir. 2013)(unpublished)).

On December 2, 2022, the USPO filed its PSR Addendum, agreeing with the United States' position that, while U.S.S.G. § 3C1.1 is improper, U.S.S.G. § 3C1.2 does apply because "the defendant fled from officers at a high rate of speed, running several stop signs and almost striking

---

[4]United States v. Moreira is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Moreira; United States v. Gray, 512 F. App'x 803, 807 (10th Cir. 2013); United States v. Porter, 643 F. App'x 758, 760 (10th Cir. 2016); and United States v. Kirkhart, 129 F.3d 131 (10th Cir. 1997), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

another vehicle, thus, causing reckless endangerment during flight." PSR Addendum at 1-2. See PSR ¶ 12 at 4 ("Officers attempted to conduct a traffic stop on the vehicle and the vehicle fled at a high rate of speed, running several stop signs and almost striking another vehicle. APD's helicopter [tracked] . . . the vehicle from the air . . . [until Estrada] fled on foot."). The USPO asserts that the Court should swap the 2-level enhancement under § 3C1.1 with a 2-level enhancement under § 3C1.2, which would not impact Estrada's total calculated offense level of 23. See PSR Addendum at 1-2.

On January 6, 2023, Estrada amended his objection. See Amended Objection at 1-4. In the Amended Objection, Estrada raises two primary arguments. See Amended Objection at 2-4. First, Estrada contends that U.S.S.G. § 3C1.2 "applies only when a defendant *actually* creates a substantial risk' of this type." Amended Objection at 2 (quoting United States v. Ansberry, 976 F.3d 1108, 1116-17 (10th Cir. 2020))(emphasis in United States v. Ansberry). Estrada argues that, because "neither the PSR nor the discovery on which it relies establishes that Mr. Estrada's actions *actually* created *a substantial risk of death or serious bodily injury to another person*," the United States has not met its burden to show that U.S.S.G. § 3C1.2 applies. Amended Objection at 2-3 (emphasis in original). Specifically, Estrada argues that the record does not contain sufficient evidence to show that the vehicle that Estrada nearly hit was occupied "and does not even state that the vehicle was on the roadway rather than simply parked somewhere unoccupied." Amended Objection at 3. Estrada argues that, because the APD officers on the ground promptly disengaged with the car chase and let the helicopter unit follow Estrada from the air, no APD officers were actually placed in substantial risk of death or serious bodily injury. See Amended Objection at 3.

Second, Estrada argues that his flight from police does not meet U.S.S.G. § 3C1.2's recklessness requirement.  Amended Objection at 3-4.  More specifically, he avers that neither Estrada's "driving in excess of the speed limit nor running stop signs are crimes that require any particular mens rea, much less recklessness.  Indeed, both of these actions alone constitute nothing more than simple traffic infractions."  Amended Objection at 3-4.  According to Estrada:

> The evidence available to the Court is simply insufficient to establish: 1) that there was any other person affected by Mr. Estrada's driving at all, 2) that any such person was at any risk of being injured, 3) that such risk was substantial, 4) that such potential injury would have been serious, or 5) that Mr. Estrada's driving was so poor as to be reckless.  Every one of these requirements must exist to apply the enhancement, and the failure to prove any one of the requirements by a preponderance of evidence mandates sustaining Mr. Estrada's objection. The government has proven none of them.

Amended Objection at 4.

In the Second PSR Addendum, the USPO responds to Estrada's Amended Objection.  See Second PSR Addendum at 2.  In the Second PSR Addendum, the USPO maintains that the 2-level enhancement under U.S.S.G. § 3C1.2 applies.  See Second PSR Addendum at 1-2.  Relying on the APD Report, the USPO asserts that fleeing a traffic stop, near collision with another car, and "'reckless . . . driving at a high rate of speed [while] disobeying traffic lights and signs,'" merit U.S.S.G. § 3C1.2's application.  Second PSR Addendum at 2 (quoting APD Report at 1).  The Second PSR Addendum also provides additional details regarding the intersection where Estrada fled from the traffic stop, namely that

> [a]n inspection of the intersection at San Pedro Drive SE and Kathryn Avenue SE revealed it is in a residential neighborhood, with no parking spaces along either street.  Moreover, the posted speed limit on Kathryn Avenue SE is 30 miles per hour, while it is 35 miles per hour on San Pedro Drive SE. The vehicle the defendant almost hit must have been on the roadway and occupied by at least a driver since there is no space to leave a vehicle parked at the intersection in question

> or any section of the roads beyond the intersection. As such, the defendant created a substantial risk of death or serious bodily injury to that other motorist.

Second PSR Addendum at 2.  The Second PSR Addendum does not assert that Estrada endangered any APD officers during his flight, but only other roadway users.  See Second PSR Addendum at 2.

The United States responded to the Amended Objection on January 13, 2023.  See United States' Response to Defendant's Amended Objection to the Presentence Investigation Report (Doc. 59)("Amended Objection Response").  In the Amended Objection Response, the United States maintains that the 2-level enhancement under U.S.S.G. § 3C1.2 applies "because Estrada's conduct: (1) grossly deviated from the standard of care applicable to reasonable drivers; and (2) created a substantial risk of death and bodily injury to other drivers."  Amended Objection Response at 1.  As to the first point, the United States underscores that Estrada fled a traffic stop, almost hit another car, ran several stop signs, disobeyed traffic signals and signs, and drove at a high rate of speed for six miles.  Amended Objection Response at 3. The United States argues that Estrada's conduct "substantially deviated" from a reasonable driver's conduct and care.  See Amended Objection Response at 3.  As to the second point, the United States contends that Estrada's decision to drive recklessly in "the middle of a populated area" created a substantial risk of death or bodily injury.  Amended Petition Response at 3.  Additionally, the United States emphasizes that Tenth Circuit caselaw indicates that U.S.S.G. § 3C1.2 applies in cases involving "high-speed car chases."  Amended Objection Response at 2-3 (citing United States v. Bush, No. CR 10-3378 JB, 2012 WL394572 (D.N.M. January 23, 2012)(Browning, J.); United States v. Moldonado, No. CR 14-4061 JB, 2018 WL 344957 (D.N.M. January 9, 2018)(Browning, J.); United States v. Kirkhart, 129 F.3d 131 (10th Cir. 1997)(unpublished)).  Finally, the United States

rejects Estrada's contention that the United States must show that Estrada endangered a specific person or that he acted with criminal intent. See Amended Objection Response at 4-5. Instead, the United States asserts that U.S.S.G. § 3C1.2 applies where a defendant is reckless, not necessarily where a defendant endangers a particular person or acts with a criminal purpose. See Amended Objection Response at 4-5.

### LAW REGARDING U.S.S.G. § 3C1.2

A 2-level enhancement applies under U.S.S.G. § 3C1.2 "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Acting "recklessly" means that "the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 Application Note 4. The Tenth Circuit has held that "the standard of care envisioned by the Guidelines is that of the reasonable person, not the reasonable fleeing criminal suspect." United States v. Conley, 131 F.3d at 1389. In addition, U.S.S.G. § 3C1.2 "applies only when a defendant actually creates a substantial risk." United States v. Young, 893 F.3d 777, 780 (10th Cir. 2018)(citing United States v. Bell, 953 F.2d 6, 10 (1st Cir. 1992)("[U.S.S.G. §] 3C1.2 punishes the act of creating a risk of death, not merely the intent to create such a risk.")). Where a defendant's conduct "posed a substantial risk of death or bodily injury to more than one person," or if "death or bodily injury" actually resulted, "an upward departure may be warranted." U.S.S.G. § 3C1.2 Application Note 5. See United States v. Osborne 593 F.3d 1149, 1152 (10th Cir. 2010)(affirming an upward departure based on the facts of a

particularly dangerous car chase, but rejecting the district court's imposition of a categorical rule that all high-speed car chases substantially endanger multiple people).

The mere fact that a defendant fled the police does not automatically trigger this 2-level enhancement. "Not every flight from a crime scene, of course, will constitute reckless endangerment under § 3C1.2. There are situations in which a defendant might flee from law enforcement officers in a manner that does not recklessly endanger others." United States v. Conley, 131 F.3d at 1390. As the Court has noted previously, "the 'Tenth Circuit's precedent indicates that the most common cases where courts apply this guideline involve high-speed car chases.'" United States v. Fichera, No. CR 17-1369 JB, 2018 WL 5924391, at *3 (D.N.M. November 13, 2018)(Browning, J.)(quoting United States v. Bush, 2012 WL 394572, at *8). See United States v. Gray, 512 F. App'x at 807 (collecting cases).

Establishing that a car chase recklessly endangered others for U.S.S.G. § 3C1.2's purposes does not require highly particularized details to be sufficient. For example, in United States v. Porter, the Tenth Circuit affirmed the district court's application of U.S.S.G. § 3C1.2 where the defendant fled a traffic stop "and led the officer on a short pursuit, committing several traffic violations and ultimately crashing into a residential garage." 643 F. App'x 758, 760 (10th Cir. 2016).

> Porter argues these undisputed facts are insufficient, as a matter of law, to support the enhancement because the facts don't identify the speeds at which he drove, the specific traffic violations he committed, or any bystanders he actually placed in harm's way. But Porter cites no authority supporting his argument that a person who flees in a vehicle to evade a law enforcement officer, drives at unspecified speeds, commits several traffic violations, crashes into a residential garage, and drops a fully-loaded semiautomatic pistol on the ground as he continues to flee on foot hasn't grossly deviated from the standard of care that a reasonable person, rather than a reasonable fleeing criminal suspect, would exercise in the same situation.

United States v. Porter, 643 F. App'x at 760.  Courts frequently consider the defendant's conduct during flight as a whole when establishing the requisite mens rea of recklessness and actus rea of creating a substantial risk of serious bodily injury or death to others.  See United States v. Fichera, 2018 WL 5924391, at *3; United States v. Conley, 131 F.3d at 1390.

## ANALYSIS

The Court concludes that the 2-level enhancement under U.S.S.G. § 3C1.2 applies to Estrada's base offense level.[5]  A preponderance of the evidence supports a finding that Estrada created a substantial risk of serious bodily injury and that Estrada's actions grossly deviated from the standard of care that a reasonable person would have exercised during those circumstances. Estrada's flight from police is within the heartland of cases where courts have applied U.S.S.G. § 3C1.2's 2-level enhancement to motor vehicle pursuits.  Accordingly, the Court overrules Estrada's objection.

First, a preponderance of the evidence supports a finding that Estrada's flight created a substantial risk of serious bodily injury or death to others.  Within the first moments of his flight, Estrada nearly hit another car, creating a substantial risk of serious bodily injury to the car's driver. See APD Report at 1; Amended Objection at 2-4.  Thereafter, Estrada led APD officers on a six-mile, daytime chase through densely populated and trafficked areas of Albuquerque, New

---

[5]The portions of Estrada's First Objection asserting that no APD officers were endangered during the car chase are moot because the PSR -- as amended by the PSR Addendum and Second PSR Addendum -- bases the enhancement on the substantial risk Estrada's conduct posed to other drivers and, not to APD officers.  See Amended Objection at 2-3; Second PSR Addendum at 2. Similarly, the Second PSR Addendum does not base the reckless-endangerment-during-flight enhancement on any facts regarding Estrada's possession and discarding of a loaded handgun.

Mexico's largest city.  APD Report at 1.  See PSR ¶ 12, at 4; Second PSR Addendum at 2.  From the intersection of San Pedro Boulevard SE where Estrada fled from police to the Motel 76 where he fled on foot, Estrada must have travelled along both residential streets and major boulevards, crossing some of Albuquerque's largest roadways.  See Google Maps; Estrada Route Map.  He sped past the fairgrounds, several parks, schools, and countless businesses.  See Estrada Route Map.  In the course of that chase, Estrada drove at high speeds, ran stop signs and traffic signals, and otherwise violated road signs.  APD Report at 1.  See PSR ¶ 12, at 4. Taken together, these facts indicate that it is more likely than not that Estrada created a substantial risk of serious bodily injury or death to others.  His route passed through well-populated parts of Albuquerque in the middle of the day.  He undoubtedly passed myriad pedestrians and drivers, all while speeding and flouting traffic laws.  Such dangerous driving in a place as populated as Albuquerque creates a great risk of severe bodily injury or death.

      Estrada attempts to downplay the risk that his driving created by contending that the car he almost hit was parked and unoccupied, see Amended Objection at 3, but maps of the intersection where Estrada nearly hit that car contradict Estrada's narrative.  There is only one lane of traffic in each of the four directions converging at that intersection and no on-street parking.  See Second PSR Addendum at 2; Google Maps; CABQ Maps.  The car which Estrada nearly hit, therefore, must have been in the roadway and occupied.  With no street parking for several blocks in either direction, if, as he posits, Estrada nearly hit a parked car, this near collision would mean that he drove off the roadway into a private driveway, creating an even graver risk to the public.

      Second, Estrada's actions grossly deviated from the standard of care that a reasonable person would have exercised during those circumstances.  See U.S.S.G. § 2A1.4 Application Note

4. A reasonable person in Estrada's circumstances would have exercised more care in obeying traffic laws, signals, and signs. See United States v. Conley, 131 F.3d at 1389. A reasonable person in Estrada's shoes also would have taken more care to avoid nearly colliding with other cars. See United States v. Conley, 131 F.3d at 1389. Contrary to Estrada's argument, his driving did not amount to a series of "mere traffic violations." Amended Objection at 2-4. Instead, a preponderance of the evidence on the record supports a finding that Estrada drove recklessly through Albuquerque and that his driving deviated grossly from the standard of care that a reasonable person would have exercised under those circumstances. See U.S.S.G. § 2A1.4 Application Note 4. For all these reasons, the Court concludes that a preponderance of the evidence supports a finding that Estrada recklessly created a substantial risk of serious bodily injury to another in the course of fleeing from law enforcement. See U.S.S.G. § 3C1.2. Accordingly, U.S.S.G. § 3C1.2's 2-level enhancement applies.

**IT IS ORDERED** that: (i) the Defendant Alonso Estrada's Amended Objection to the PSR, filed January 6, 2023 (Doc. 57), is overruled; (ii) the applicable offense level is 23 and the applicable criminal history category is V; and (iii) the imprisonment range established by the United States Sentencing Guidelines is 84 to 105 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
  United States Attorney
Patrick Cordova

   Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Donald Kochersberger
Business Law Southwest LLC
Albuquerque, New Mexico

     *Attorneys for the Defendant*